## LABATT v. BELL CABS, Inc.*
### No. 14343.

Court of Appeal of Louisiana. Orleans.
Jan. 16, 1933.

Bond, Curtis, Hall & Foster, of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling and M. Truman Woodward, Jr., all of New Orleans, for appellee.

WESTERFIELD, J.

This is a suit for damages growing out of an accident which happened at the intersection of Danneel and Octavia streets in the city of New Orleans on the 27th day of March, 1932, when plaintiff's Buick sedan crashed into a post on the uptown lake corner of the intersection. The plaintiff's car, which, at the time of the accident, was driven by her son, Norton L. Wisdom, who was its sole occupant, was being driven out Octavia street towards the lake, while a taxicab, owned and operated by defendant, Bell Cabs, Inc., was driving along Danneel street and nearing the intersection of Octavia. Wisdom, the driver of the Buick car, believing that there was danger of a collision, turned sharply to the left and crashed into a post, causing the damages for which this suit is brought. It is claimed that the taxicab was entirely to blame for the accident, in that the negligence of its driver created a situation of danger, with the result that the driver of plaintiff's car, in an effort to avoid colliding with the taxicab, hit the post. Wisdom claims to have pre-empted the intersection before the taxicab reached it, and contends that his dilemma was occasioned by the failure of the driver of the taxicab to stop, or check his speed.

In the petition it is alleged that the Buick entered the intersection "at a very slow rate of speed, after the driver had first signalled with its horn, and had proceeded at least halfway across the said intersection when he noticed the aforesaid taxicab belonging to the defendant approaching the intersection at a very rapid rate of speed, while driven in a negligent and careless manner." On the other hand, the driver of the taxicab also claims to have gone halfway across the intersection before the Buick entered it. He testified that the Buick failed to sound its horn, and entered the intersection at a very rapid rate of speed, which he fixes at 45 miles per hour. There were four occupants of the taxicab, three of whom testified, more or less, in corroboration of its driver. It is admitted that the taxicab had the right of way under the Traffic Ordinance No. 7490, C. C. S., because it was approaching from the right of the Buick. Mr. Wisdom is somewhat corroborated by two other witnesses, Mr. Lazarus and Mr. Cohn, but these witnesses, two young men, were a considerable distance from the scene of the accident, and could easily be mistaken as to which car entered the intersection first. Moreover, the testimony of Mr. Wisdom, when considered in connection with the allegation in the petition and with a statement which he dictated in his office several days after the collision and gave defendant, is most confusing, for in the statement he says that he entered the intersection at a speed of from 20 to 25 miles an hour, and that the taxicab came to a momentary stop and swerved to the left, while, in his testimony, he asserts that he entered the intersection at a speed of fifteen miles an hour, and saw the cab about sixty feet from the intersection when he was about thirty feet distant. The cab he estimated to be going about thirty miles an hour. On the other hand, the petition alleges that Wisdom saw the taxicab when halfway across the intersection. If the version of the accident as given on the stand is the proper one, then the Buick reached the intersection at exactly the same moment as the taxicab, and, since the cab had the right of way, it should have been permitted to proceed. If the Buick entered the intersection at twenty-five miles an hour and the taxicab stopped and turned to the left in the intersection, the Buick was

---

going too fast to be free from fault and the taxicab too slow to create an emergency which would justify the Buick driver in the course he took, which, he claims, was necessary to prevent injury to life or limb of the occupants of the taxicab and himself, either or both. If he did not see the cab until halfway across the intersection, as the petition alleges, he was not keeping a proper lookout, for there was nothing to obstruct his vision in the direction of the oncoming taxicab.

■ In any event, therefore, even though it be conceded that the taxicab was negligent, it must also be admitted that the Buick was at fault, and the emergency rule does not apply when the one invoking it creates or contributes to the emergency from which he attempts to escape. See Independent Oil Refining Co. v. Lueders, 17 La. App. 154, 134 So. 418, and cases therein cited.

Our conclusion is that the judgment appealed from is not correct, and, for the reasons herein assigned, it is reversed, and it is now ordered that there be judgment in favor of the defendant dismissing plaintiff's suit.

Reversed.